Welcome to any of the court's inquiries today. I'd like to take a few minutes to respond to some themes that have come up in this case, context, willfulness, and abdication. After that, I'll leave a few minutes to respond to anything that the K and N attorneys say today. By context, I mean the intellectual property context. We all know that sometimes the smallest package under the Christmas tree can be the most important and the most thoughtful. Well, these are the decals in question. They're certainly small. They've spawned two federal lawsuits, one state court lawsuit, and one federal disciplinary proceeding. Is this, as Judge Matt said, a ridiculously overblown case? Or is this a case that involves substantively important rights, a balancing between constitutional rights and commercial rights? We submit this is not ridiculously overblown, and put in its proper intellectual property context, that becomes clear. K and N has stated its position quite succinctly here on page one of its first appellate brief. No one is entitled to freely use the K and N trademarks without their authorization or consent. That's their position. It happens to be contrary to law. It ignores the constitutionally based doctrines of fair use. It sounds like K and N is seeking a corporate publicity right or some sort of creation. But, of course, K and N is a creature of statute. It has no publicity right the way natural people do. The only rights K and N has come from the statute. And the statutes provide three mechanisms for K and N to protect what it calls its trademark, its corporate image.  Well, patents and copyrights are part of the congressionally created group of statutes dealing with constitutional rights to fair use. Coming from Article I, Section 8 of the Constitution. The rights are limited for a period of time, and then the public has a right to use those. So if K and N were to take their decal and put it on a useful article, like a keychain, it would be surface ornamentation on that keychain. And if they did not seek a patent on that within the statutorily prescribed period of time, then any member of the public is free to use that graphic as ornamentation. You and I can take and plaster our walls with them, and there's nothing K and N can do or should do about it. It's ornamentation. Similarly with copyrights. It's important to keep in mind here that K and N began using this graphic under the 1909 statute. The statute changed effectively in 1978. Under 1909, the 1909 statute, if you don't register it, you have no copyrights. Under the current statute, that's not quite the case. Registration is a formality. But we're not dealing with that. K and N testified. It began using this as early as 1969, and there's objective evidence in the record it was at least in 71 and so forth. So did they get a registration under the 1909 statute? No. Which means the public is free to use this graphic, and there's nothing K and N can or should be able to do about it. That takes us to trademarks. What is a trademark? A trademark is a brand. You put this on a keychain, and you take it off the keychain, and you still have a product, the keychain. Here's K and N's decal. Well, if I can get it off on me. It's pieces of plastic. That's all it is. You take this graphic apart. You take the graphic off of it, and what do you have? Nothing. The graphic is the product. That's the very essence of functionality. This graphic provides the entire value, cost, characteristic, and usefulness of the product. There's nothing else there. That's functionality. And functional items do not serve a trademark purpose. That is clear. The district court, unfortunately, didn't address the traffics decision, U.S. Supreme Court of Traffics. Well, this court has subsequently. I have referred to keychains. Obviously, that's an analogy to automotive gold. This court has recognized that functionality is a viable trademark doctrine in this district. So given the importance of establishing a clear line of demarcation between constitutional rights of fair use and commercial rights, is this ridiculously overbought? No. It's not a question of $279 worth of product being sold. It's a question of the individual rights of Sarah and Steve and the rest of us. I did get the feeling the district court was trying to help you with those statements, however. Given that it was a $259 case and given all the things that have gone on through this case, to some extent, they were trying to help you with what they said on that. Because they felt like, well, the difference between trademark and copyright, which you're making your arguments generally in those areas, that even if this was $279 in total, and even if we've wasted a lot of time and effort in this because of that, because of the low amount, and I got that that was maybe your argument as we relate to the other arguments here, which are damages and how much, attorney's fees, if any. I thought that's what he was really going to. To a degree, he did. He went straight to the statutory damages provision for the remedies. He found no actual damages to K&N. There was nothing under 1117A. And in his hearing on the 19th, nothing under 1117B.  He did apply statutory damages of $20,000. Kennedy. Which was discretionary with him, correct? Absolutely. I'm not contesting the amount of that. What I'm contesting is the rationale behind that. In the briefs, I point out that if you're going to establish statutory damage, it's fine. There are factors you look to. But to base that virtually exclusively on the failure of the parties to settle before the lawsuit began for that amount, that's an impermissible chilling phrasing of access to the courts. Because the purpose of the courts is if you can't agree, someone has to do the hard work and make the hard choices. And if you say to someone, well, you'd better settle or I'm going to give what the other side asked in settlement, wait a minute. That's taking people out of the court system. That's not what we want to do here. I appreciate your argument. Talk to me a little bit about your argument on attorney's fees. It seems to me that one could read the statute that this amount for attorney's fees, though, it was certainly a lot less than had been requested. And it is a discretionary situation. So, therefore, he made a good discretionary decision under the statute. We're not arguing the amount. We're arguing the existence. And that's deniable. Attorney's fees are not awarded in the typical case. It's the old American rule. We understand it. You litigate, borrowing a statutory provision for attorney's fees, you each bear your own fees. So if there are attorney's fees available, it has to be under the statute. And there's nothing under 1117C. It's only under 1117B and A, which the judge did not make a finding under. And if we look, even at 1117A and B, what's the hallmark that this circuit and almost every other circuit has followed? You have to have willfulness. And, in fact, this court recently has gone so far in the Inverness case to say you not only have to have willfulness, you have to have something more than willfulness to make extenuating circumstances. Well, we didn't even have willfulness here. The only place we have willfulness is in the December 21, 2005, order that Judge Matz signed after specifically saying he was going to delete references to willfulness. K&N prepared it. It said willful. Then in the hearing on the motion for attorney's fees, he said, no, they're not willful. Therefore, no willfulness, no attorney's fees. The normal American rule applies. Abdication is one of the other topics I want to talk about. All right, we talked about it a minute ago with regard to the order. I submit that, in effect, imposing statutory damages without looking at the normal factors for statutory damages and looking only at the amount that would have been available in settlement is a form of abdication, too, because it imposes upon the attorneys the obligation to resolve the case without going to court. And if you don't, okay, I'm going to give them what they asked for in settlement. That's not right. But the real problem with abdication here is as to the innocent printer defense because that defense provides this court with a mechanism for not just reversal but totally dismissing all of K&N's claims and all of their remedies, even with regard to an injunction. I didn't really understand that argument because it seemed that your clients were in the business of selling K&N logos, not in the business of just running a printing operation. Okay. When you sell a graphic, what do you do? You print it on something. It's the only way to sell the graphic. If they were selling posters that said K&N on it, you'd have to print it. If you take away the printing, as I tried to do a minute ago on this, there's nothing left. That's all there was selling was printing. Now, K&N's response in the brief was, well, they're in the business of that. Well, so is every printer. If what you're selling is a printed object and that's all you're doing, and you're doing it in response to Internet requests for someone to print it, because remember, you and I have the ability to go plaster K&N all over our cars, put it on our walls, any way we want. To help us do that, we're going to go to a printer or a painter. I thought they had 89 decals left over at the point when K&N contacted them. No, that's not correct. They sold a total of 89 pairs of decals altogether. They had a handful in inventory that I've used up several in this lawsuit already, including this one here, and that was it. And so were those done in response to order? Were they on inventory? It's my understanding, and this is not in the record, it's my understanding that those were in response first to testing of the system to see if it worked, and then they had a couple left over when people changed their color requests. Because if we look at the ads, it says you can have it any color you want. K&N's come with this three-color combination. Sarah and Steve's were only monocolor, but they could be any monocolor you wanted. Occasionally, people would write in or call in and say, or email in and say, no, I changed my mind, give me a different color. So there were some from that, and there were some also that were in inventory because I asked them to create some for me for purposes of this lawsuit. But if the innocent printer defense applies here, and the judge never addressed it, either at the summary judgment level or at the motion for attorney's fees level, then there's no money that's going to change hands here. It's only an injunction. But an injunctive remedy is always discretionary with the court. An injunctive remedy is not a penalty. It's a deterrence. And we explain this to the district court, I believe, on pages 22 and 23 of the memorandum in opposition for the motion for summary judgment. You don't have to give an injunction. Judge Matz found that there was a very low probability this was ever going to happen again. And in fact, Steve and Sarah had stopped as soon as K&N called them and asked them to stop. That was it. They were done. This is never coming back. What are we after an injunction for? What is being deterred here? K&N could have said at that phone call, victory, we won, 279 units or dollars worth gone, and they're never going to do it again. Instead, they proceeded to litigation. For what? I submit we don't have to guess. There's no need for an injunction. There's no monetary damages awardable here. This case should be dismissed. Just understanding the procedural, the sequence of events, it appeared that you brought, your clients brought a declaratory action first in one jurisdiction, and then there was an action by K&N subsequently in a different jurisdiction. What exactly happened there, the time sequence? November 29, 2005, we were informed by K&N that if they didn't pay us, they were going to sue us. Under the venue jurisdictional rules of the Sixth Circuit, we filed a declaratory judgment action in the Western District of Michigan because we knew we were going to be sued, and while K&N characterizes this as a race to the courthouse, yes, it was, because extreme disparity in economic resources is viable grounds to go to and viable reason under the law of the Sixth Circuit to go to your local district court and ask for relief. That was fully briefed before Judge Enslin. Then the next day, K&N sued us out here. In both courts, there was a motion to change venue. Judge Matz ruled on his motion to change venue first and said, no, I'm keeping it. I'm cutting short, but that's basically what he said. Then we went back to Judge Enslin and said, okay, you know, if we're going to be in California anyway, let's not do two lawsuits. We withdraw our objection, and he transferred the case out here. If the Court has no other questions at this time, I reserve the remainder of my time. Thank you. May it please the Court. Good morning, Your Honors. My name is Sam Ariella, and I represent K&N Engineering. What's at issue here is a summary judgment proceeding. There are many undisputed facts. An undisputed fact is that Mr. Wendell and Ms. Boulat purchased a CD-ROM with various trademarked information, one of which was K&N Engineering's trademark. Mr. Wendell knew about K&N Engineering. He had worked in an automotive retail parts store and was aware of the product and the goodwill associated with that product. He sought to benefit from the goodwill that K&N had created for his own profit. He printed out decals to sell to others via eBay and the Internet. That is clearly undisputed. The issue that appellants bring up is that, well, there's a tribal issue of fact, and that tribal issue of fact are two things, the difference in coloration of the decals and difference in the size of the decals. But in order to be a tribal issue, that has to be material and it has to be genuine. And changes in the colors or the size of the decals is neither material nor genuine. We cite case law in our brief to that effect because, of course, if that was a standard, a slight miniscule unimportant variation would negate trademark rights, and obviously that cannot be the state of the law for that situation. That is the only tribal issue asserted either before the district court or before this court in that regard. The issue of trademark is addressed as well in the appellate brief under the Harley-Davidson case in which the court found that a sale of counterfeit decals constitutes trademark infringement. And it's important in this context to recognize that this is a counterfeit action. This is the most egregious form of trademark infringement contemplated by the Lanham Act. Can I direct your attention to this attorney's fees issue? Your client elected to take the statutory damages under 1117C, and so I didn't see in the statute why your client would be entitled to attorney's fees under 1117B or A. Can you explain to me where in the statute that would be allowable? I know there's some district court cases that have done that. Yes. The attorney's fees provision is under Section B, 15 USA, Section 1117. And if I may address that by explaining some of the legislative history, which I think will enlighten the court in this process. In 1975, the court in response to a the Congress in response to a U.S. Supreme Court case in which the Supreme Court at that time had found that attorney's fees were not available in Lanham Act proceedings, amended the statute, amended the statute in 1975 to include attorney's fees. In 1995, the issue of statutory damages for counterfeit marks was amended. And so we have this history in 1975 where Congress remedying a court opinion in which it wanted to change the law, and it did. And the whole purpose of that was to provide complete relief. Congress recognized that not providing for attorney's fees in these types of situations does not provide complete relief to the agreed trademark holder, and did that in 1975. In 1995, we have statutory damages for counterfeit marks. There is nothing, and appellants have asserted no authority, which says that the addition of statutory damages somehow undercuts your ability to get attorney's fees. And in fact, the legislative policy given the 1975 amendment indicates that attorney's fees are to be awarded in these types of situations. But do you agree there's nothing in the statute that would authorize attorney's fees if someone elects, if a plaintiff elects statutory damages? No, I do not agree with that, Your Honor, respectfully. Again, I believe subsection B provides for that. And also, this ---- How so? Because it says in assessing damages under subsection A of this section. Well, subsection A, I think it needs to be read in the context of all of the particular sections. And it says in assessing damages under subsection A, the court shall, unless the court finds extenuating circumstances, enter reasonable attorney's fees. It's a difference, I think, but what the legislature is trying to do is provide further relief for counterfeit marks. Subsection A is more of a generic situation, and we have B in which it's particular to counterfeit mark. And to say that counterfeit marks are less entitled to complete relief than other types of trademark infringement, I believe, goes against the legislative history and the legislative policy behind the situation. While I can understand your argument, one could equally make the argument that if you're going to go under the damage which you don't have to prove to the ultimate extent, which is limited to some extent, and which is something where people don't have to undertake as many attorney's fees and many attorney work product problems, all of the things that go with putting on a big case in this area, that one should not have attorney's fees in those cases. But one should because C allows the judge some discretion in a statutory complex to make a discretionary decision as to general damages, and the attorney's fees ought not be awarded in those situations since it doesn't either comply with A or B. I mean, I guess I'm reading the statute as we did from A to B to C and trying to make it in the statutory framework. I do not see how C, on award of damages under C, would automatically give you attorney's fees because there's nothing there to get me there. And I see what you're arguing, and I can even see the historical context. But if Congress really wanted us to give attorney's fees under a C judgment, which is total discretion by the district court, without having all of the people, the normal litigants, go through all of the extra expense to put on all the evidence that it would take to pursue either an A or B claim, then it would seem to me to be absolutely obvious if they wanted also attorney's fees, they could have added it under C rather than leave it. And I would respectfully submit that, given the legislative background in adding attorney's fees in 1975, that when the statutory damages provision was added, that Congress could have explicitly excluded attorney's fees from in those situations, and it did not do that. Well, I don't know whether it did or not because it certainly didn't talk about it under C. And I believe that the policy of adding attorney's fees, if they were to carve out that for statutory damages, would have been more explicit, and we would have been on notice of that. You would be clear about what you're waiving if you're electing statutory damages. And we're also getting into a situation, and the legislative history to the statutory damages is also noteworthy because it dealt with counterfeiting, again, the highest form of trademark infringement. And it talked about the situation in which counterfeiters notoriously have inexact records and the difficulty of proving actual damages based upon inexact records. And that was legislative history behind the amendment to Subsection C, and therefore the reason, the rationale for the addition of Subsection C, which also has a deterrence component as well. So under Appellant's rationale, this would actually reward a counterfeiter from keeping inexact records to prevent a trademark holder from proving actual damages. Well, especially in light of the Internet, which is how these particular appellants traded on the K&N trademark, then under that situation, you'd be stuck with statutory damages and no attorney's fees. That's a counterfeiter who does not keep inexact records is going against his or her best interest in that situation. Clearly, the law should not reward counterfeiters from keeping inexact records and thereby compelling a trademark holder to go the statutory damages route. The ---- I'll be fair with you. The biggest problem that an old judge from Idaho sees, and maybe it's just because of what we get when we're in Idaho, but $279 worth of damage, at best, at best, awarding $100,000 of attorney's fees on a discretionary basis and going through all that we did, it seems to me that the poor judge was saying somewhat what he should have said. It seems to me to be a case which could have been done in a totally different way than it was. And I'm bound by discretion here. But how do I suggest that even though you spent $300,000 getting here and he awarded you $100,000 on $279 worth of damage, that I should say it's absolutely discretionary for $100,000 worth of fees? Well, I would agree that the district court is in a prime position to assess all of the equities of the situation. It's regrettable that this matter took the path that it did. You've heard some of the arguments from appellant's counsel even to this day indicating that anyone can use our trademark on a decal and plaster it everywhere. That might offer some explanation, but in any event, it's regrettable. But the court did have discretion on the statutory damages. On the attorney's fees, however, that subsection is a little bit different, and I think it's careful to deal with the wording. Under subsection fees for statutory damages, court talks about willful. In subsection B, it talks about intentional and knowing. There's obviously a difference between intentional and knowing in B and willfulness in subsection C. The intentional component, the summary judgment order is replete with references to the defendant's intentional conduct. Appellants contend, well, the willfulness issue is not satisfied. Again, under the clear wording of the statute, willfulness is not an element for attorney's fees award under subsection B. The knowing element is. Appellants argue in the alternative that they did not know that what their actions were constituted trademark infringement. That's not what is required to be known. What is required to be known is that your act is wrongful. The defendants understood that their conduct was wrongful. The record indicates that they did not have consent from K&N to undertake this activity. The record also reflects that they knew that the logo on the decals they produced belonged to K&N. That is the requisite knowledge. You know something doesn't belong to you. You don't have permission from that person to use that, and you use it nonetheless. That is the knowledge component. It's satisfied under subsection B, which warrants attorney's fees. Now, the district court viewed all of the equities in this situation and the statutory damages and really bent over backwards to try and be as fair and reasonable and as accommodating, given the totality of the circumstances, to these particular defendants and awarded $20,000 in statutory damages. Appellants in oral argument just now essentially concede that they don't have a problem with the amount, just with the rationale, and I would submit to them that that's a moot point at this juncture. If the amount is certainly sustainable under another rationale, and it certainly is under the Philip Morris v. Shalabi case, which we cited in there, in which a central district court judge awarded $10,000 for one transaction of counterfeit cigarettes, and here we have 89 separate transactions of each involving two sets of decals, it's certainly appropriate under that standard. And the amount of the attorney's fees, it seems that the district court judge was also recognizing the equities of the situation and has a great deal of discretion, and I would submit on that issue that the standard of review for this court is whether the district court abused its discretion, and it had a great deal of discretion on this issue. Are you aware of any cases in which we've held that there was an abuse of discretion based on statutory damages that was within the guidelines set forth in the statute? I am not, Your Honor. I'm not. Frankly, I look for any holding of ours where there might have been abuse of discretion on attorney's fees. I didn't find any. Do you know of any? I do not, Your Honor. I do not. And, of course, with that great deal of discretion that the trial court is awarded and with the abuse of discretion standard that's applicable to this court, I would respectfully submit that the district court ordered for $100,000 in attorney's fees as well within the reasonable range. The court reduced that amount significantly from the amount that was requested, and, again, the court was very cognizant of these defendants and their background and all of those situations and took that into account and to now suggest that that amount is somehow inappropriate would really request that this court, the appellate court, undertake a fact-finding endeavor, which the district court was much better prepared for given all of the considerations. And what fact-finding did it do? I mean, in the record, given what we have in this record, it really didn't seem like there was a lot of fact-finding in coming up with either one of those determinations. It was kind of, well, and it need not be, especially for the statutory damages. It's a discretionary decision. He has to kind of determine what to do. But as to the attorney's fees, the best we can get from this is you wanted $300,000 and $300,000 is appropriate, but there were a lot of things in this record which would indicate he wasn't even going close to $300,000. He might not give any. And he decided to give the amount that was ultimately awarded there. After taking it into account, I think that the order on the attorney's fees addresses that, addresses some of the history to this particular file that the court was well and unfortunately painfully aware of, and it was not an abuse of his discretion in order to come to that amount. Unless the court has any other questions, I would submit. Thank you. Thank you. Your Honors, there's just a couple points I'd like to address here. First, with regard to the attorney's fees issues. Counsel for K&N said that my clients knew about K&N. Well, Steve certainly did. But it's one thing to know about a company and know about its trademarks, and something else to know that you're doing something that is wrong. If the act of printing these is wrong, that goes to willfulness. The judge found they were not willful infringers. 1117B says, when assessing damages under 1117A, and this court has consistently said, if you're going to go for damages under 1117A, which gives attorney's fees, you look to willfulness. The court said they're not willful. Similarly, when you come to 1117B, there's no willfulness here, and there's no further extenuating circumstances that they knew the act was wrong. They knew they were doing something, but they didn't know it was wrong. So what we come down to, there is not a question of the amount that should have been awarded, or whether any amount should have been awarded at all. That's not a question of discretion. That's a question of statutory interpretation. As to the material issues of fact that should have gone to the jury, we have clear in the record evidence that the two decals are not the same. One's monocolor, one's tricolor. We have evidence in the record that at least one customer, Charles Morey, made the purchase of Sarah and Steve's product because it was monocolor, because of the difference in size. He knew that K&N had these decals. They put them in all their oil filters boxes, but he didn't want that. He wanted something different. So that goes into a question of likelihood of confusion and to a question of are they identical, are they counterfeit. Is the typical purchaser going to think that one is the other? There are many other tribal issues of fact here and the likelihood of confusion analysis that the court never got to. Counselor K&N says we need this as a deterrence because counterfeiters notoriously have incomplete records. We don't have that here. K&N got from eBay the complete computer printout of every one of our sales. There's no question as to how many we sold. Apart from what was done on eBay, there was one pair of decals given to a friend who put them on his toolbox in his refrigerator. We don't have the situation here of some clandestine operation. Pretty clear and cut above board. So what we have to look to then is what happened in this case and is the result appropriate for this case. Does the court have any further questions of me? No. Thank you for your time. Thank you. This case is submitted. And the next case is Kisirvi, Kingdom of Spain.
judges: Nelson, Ikuta, Smith